UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CARLOS ROMERO,

               Petitioner,

   -against-

KAREN CROWLEY,

               Respondent.
--------------------------------------------------------X

                             **REPORT & RECOMMENDATION**
                                **17-CV-3298 (AMD)(LB)**

**BLOOM, United States Magistrate Judge:**

      Petitioner Carlos Romero files this *pro se* petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  Pet., ECF No. 1.[1]  Petitioner challenges a 2011 New York Supreme Court,

Queens County, conviction of two counts of Criminal Possession of a Weapon in the Second

Degree, Assault in the Second Degree, and Reckless Endangerment in the First Degree.  Pet. 1.

The Honorable Ann M. Donnelly referred this petition to me for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b).  For the reasons set forth below, it is respectfully recommended

that the petition for a writ of habeas corpus should be denied.

## BACKGROUND

I.     The Underlying Criminal Case

    **A.  Evidence Adduced at Trial[2]**

      On September 18, 2009, Guadalope Chabla[3] and Jennifer Gutierrez arrived at a party in

Queens, where they saw three individuals, identified at trial as Luis Mayancela, Victor Palaguachi,

---

[1] As the pagination in the Petition is not consistent, the Court refers to the ECF page numbers.

[2] A jury trial was held from May 5 to May 23, 2011, before the Honorable Lenora Gerald in the New York Supreme Court, Queens County.  References to the criminal trial transcript ("T.T."), filed at ECF Nos. 6-3 and 6-4, include the last name of the witness and the transcript page number(s).  The testimony page numbers refer to the original document, not the ECF generated page number.

[3] Chabla's name is also spelled as Guadalupe Chalba throughout the trial transcript. See Chabla: 483; see also, e.g., Chabla: 554.

and Christian Palaguachi, fighting with a third individual, identified at trial as Petitioner. Chabla: 494-97, 530; Gutierrez: 878-79, 883.  After being punched and kicked several times, Petitioner escaped on a bicycle. Chabla: 530; Gutierrez: 879-80; Palaguachi: 609.  Chabla, Gutierrez, Mayancela, and the Palaguachis then walked towards a nearby park. Chabla: 495; Palaguachi: 611-13; Gutierrez: 884, 916.

Petitioner returned to the park with a group of other young men. Chabla: 500, 532; Palaguachi: 614; Gutierrez: 885.  After exchanging curses with Mayancela and the Palaguachis, Petitioner pulled out a handgun and pointed it at Chabla, Gutierrez, Mayancela, and the Palaguachis. Chabla: 502-03; Palaguachi: 617-20; Gutierrez: 887-91, 929-30.  Petitioner then raised the gun toward the sky and fired a shot into the air; a bullet fell to the ground.  Palaguachi: 620-21, 640, 652-53, 674, 693-94; Gutierrez: 891-92; see also Chabla: 546; Lee: 760-61. Petitioner again pointed the gun at Chabla, Gutierrez, Mayancela, and the Palaguachis, but when Petitioner attempted to pull the trigger, the gun "didn't work" and "jammed."  Chabla: 503; Palaguachi: 621-22, 640, 652-53, 694-95; Gutierrez: 892.  Petitioner attempted to fix the jam.  Chabla: 504; Palaguachi: 621-22.  A physical fight broke out after Mayancela and the Palaguachis attempted to take the gun from Petitioner.  Chabla: 504-05; 540-46; Palaguachi: 622, 640; Gutierrez: 892-93. Chabla heard the gun "[go] off" as Mayancela and the Palaguachis ran toward Petitioner. Chabla: 504. Gutierrez saw and heard three shots fired.  Gutierrez: 931.  Various anonymous 911 callers reported multiple shots fired.  T.T.: 947-52.

A chaotic and bloody fight ensued until police sirens approached and the groups dispersed. Chabla: 507; Palaguachi: 625; Gutierrez: 895-96.  Police Officers Cheryl Johnson and Ladrata Lee responded to a radio alert that shots had been fired at 99th Street and 35th Avenue in Queens. Johnson: 567, 576, 578; Lee: 709-10.  Petitioner approached the officers' vehicle stating that he

had been robbed.  Johnson: 569, 579; Lee 710-12.  Petitioner entered the back of the police car to canvass the area to look for the people who allegedly robbed him.  Johnson: 570, 575; Lee: 743-744.  While riding in the patrol car, Petitioner came upon Chabla, Gutierrez, Mayancela, and the Palaguachis, who Petitioner identified as the people who robbed him. Johnson: 571-72, 581-83; Lee: 714.  Upon seeing Petitioner inside the vehicle, the group yelled to the officers that Petitioner was the "the guy that was shooting."  Johnson: 572, 587.  Petitioner was arrested shortly thereafter. Johnson: 573; Lee: 724.  Chabla and Gutierrez led Officer Lee to the intersection where the shots were fired.  Lee: 717-22, 770; Gutierrez: 903-04.  There, Officer Lee recovered and vouchered one fired nine-millimeter bullet and three unfired nine-millimeter bullets from the ground.  Lee: 717-22, 770-71; see also Gutierrez: 903-04.  The police neither saw Petitioner in possession of a gun nor did they recover a gun from Petitioner.  Johnson: 591. Lee: 764, 776.  Christian Palaguachi testified that one of Petitioner's friends had taken the gun after it dropped during the brawl and left the scene. Palaguachi: 669-70, 674; see also Gutierrez: 899.  The police did not voucher or test the clothing Petitioner was wearing. Lee: 762-68, 790.

At trial, Greg DiCostanzo, a detective in the Firearms Analysis Section of the New York City Police Department's Forensic Investigations Division, testified for the People as a firearms expert. DiCostanzo: 835-39.  DiCostanzo was assigned to analyze the ballistics evidence in the case. DiCostanzo: 839.  DiCostanzo received evidence to examine from one fired bullet and three unfired bullets. DiCostanzo: 839-40.[4]  DiCostanzo explained the mechanics of a semi-automatic pistol and testified that he examined a cartridge casing under a microscope and determined it was fired from a .9-millimeter semi-automatic pistol based on the extractor and ejector marks.

---

[4] Specifically, DiCostanzo testified that he received "[o]ne cartridge casing and three unfired cartridges." DiCostanzo: 840. He went on to explain that a cartridge is a "complete unfired bullet" whereas a cartridge casing is "the part that [is] left behind in the firearm as the bullet is fired." Id.

DiCostanzo: 843-49.  He also examined three unfired cartridges under a microscope and concluded that all four cartridges, fired and unfired, received marks from the same firearm based on their unique and identical extractor marks.  Id.  DiCostanzo testified how Petitioner could have fired a shot in the air and, as he did that, a bullet could fall to the ground, if either "[s]omebody could be calling a cartridge casing a bullet" or "a bullet could have been so low in powder it ha[d] just enough to have ma[de] it out of the barrel and fall to the ground."  DiCostanzo: 850.  DiCostanzo testified that it was possible that Petitioner's gun jammed or would not work because the firing pin broke or because something in the firearm malfunctioned after the first shot was fired.  DiCostanzo: 851.[5]  Although DiCostanzo testified that his area of expertise was firearms operability and microscopy, DiCostanzo: 861, he did not testify that he or anyone else tested the ammunition for operability.  See DiCostanzo: 835-65.  Further, DiCostanzo could not confirm whether DNA, parrafin, or fingerprint testing was performed on the evidence collected at the crime scene.  See DiCostanzo: 855-65.

### B. Defense Counsel's Motion to Dismiss

After the prosecution rested, Petitioner failed to return to court for the proceedings and the trial proceeded in his absence.  T.T. 1020.  Defense counsel moved for an order of dismissal on the grounds that: (1) the People did not meet their burden of proving the case beyond a reasonable doubt nor the prima facie burden to submit the counts to the jury; and (2) the People's witnesses were not credible. T.T. 1020-23.  Specifically, counsel argued that the People did not prove that Petitioner possessed the gun nor Petitioner's intent to shoot the gun at the witnesses.  T.T. 1021-

---

[5] In addition, DiCostanzo surmised that "[f]rom what he is telling me is that one shot was fired successfully, cartridge case was ejected and then something happened to the firearm where you want to try to clear, if you pull the trigger again, nothing happen [sic]. You want to pull that trigger out and slide the slide back. If nothing happens, you do it again in case the ammunition is bad. As long as you keep doing that, you can keep extracting cartridges. One shot went, firearm broke, tried, tried, tried and that was it."  DiCostanzo: 853.

22.     Alternatively, counsel requested that the court instruct the jury that it could consider the lesser included offense of criminal weapon possession in the fourth degree. T.T. 1025-30.  The court denied counsel's motion, concluding that the charge of criminal weapon possession in the fourth degree was not supported by the evidence.  T.T. 1073.  In his summation, Petitioner's trial counsel attacked inconsistencies in witnesses' testimony and the witnesses' credibility. T.T. 1034-1070.  Defense counsel also, *inter alia*, questioned the firearms expert's handling of the ballistics without gloves and the police's failure to "fully investigate" the case, including the failure to perform parrafin testing on Petitioner for gun residue. T.T. 1058-61.

### C. Verdict and Sentence

On May 23, 2011, after the jury had deliberated for several days and sent the court several substantive notes, Petitioner was convicted on all charges: two counts of Criminal Possession of a Weapon in the Second Degree, Assault in the Second Degree, and Reckless Endangerment in the First Degree.  T.T. 1175-78.   Petitioner was sentenced *in absentia* on July 6, 2011.  Sentence in Absentia, ECF No. 6-4 at 413-16.  A technical defect in the sentence was later corrected. Sentence, Sept. 13. 2011, ECF No. 6-4 at 417-19.  When Petitioner returned to court on October 3, 2013, the sentence was executed.  Sentence, Oct. 3, 2013, ECF No. 6-4 at 419-20.[6]

### D. Petitioner's First Motion to Vacate the Judgment

Petitioner filed a *pro se* motion to vacate the judgment pursuant to N.Y.C.P.L. § 440.10. S.R. 1.[7]  In his affidavit, Petitioner argued, *inter alia,* that 1) his weapon possession conviction

---

[6] An amended sentence was issued on October 29, 2013.  Amended Sentence, ECF No. 6-4 at 425-27. As to counts one and two, charging Criminal Possession of a Weapon in the Second Degree, the court imposed a sentence of seven years in prison and three years post-release supervision. Sentence, Oct. 3, 2013, ECF No. 6-4 at 423. As to count three, Assault in the Second Degree, the Court imposed a sentence of five years in prison and three years post-release supervision.  Id. As to count four, Reckless Endangerment in the First Degree, the court imposed a sentence of one to three years. Amended Sentence, ECF No. 6-4 at 427.  The sentences on all counts were to run concurrently. Sentence, Oct. 3, 2013, ECF No. 6-4 at 423.

[7] References are to the State Record (S.R.), filed at ECF No. 6-2, followed by the page number.

was based on insufficient evidence, S.R. 7-10; and 2) the People failed to prove the case beyond a reasonable doubt, in part because of substandard investigative procedures, which included allegations that "material evidence was jeopardized when defendant's clothing was not vouchered for paraffin testing" and ballistics evidence was tainted by the firearms expert's handling of bullets and a shell casing without gloves, S.R. 11-12.  In addition, Petitioner brought a Sixth Amendment ineffective assistance claim, based on counsel's 1) failure to "establish a preponderant defense of the insufficient evidence procured by the prosecutor, and more so, their discretion not to corroborate the evidence by method of Parrafin testing or DNA of the ballistic evidence," S.R. 16; 2) decision not to challenge the legality of the Molineux hearing, id.; 3) failure to inform Petitioner of the possible immigration consequences of a conviction, S.R. 18; 4) decision to "mov[e] with a markedly weaker defense, instead of challenging the legally insufficient evidence not supporting the elements prescribed in the charges," id.; and 4) failure to "adequately investigate, prepare for, and advise of possible defenses[,]" S.R. 17.  In his reply, Petitioner further states that trial counsel "failed to present and raise question [sic] pertaining to why the arresting officers had never conducted a Gunshot Residue Test," S.R. 70, and "used poor tactics to dismiss the criminal possession of a weapon charge," S.R. 72.

The Honorable Lenora Gerald, New York Supreme Court, Queens County denied Petitioner's motion on June 29, 2016.  First, citing N.Y.C.P.L. § 440.10(2)(b), Justice Gerald denied Petitioner's claims that his conviction was based on insufficient evidence and that the People did not prove the crimes beyond a reasonable doubt because these two claims were on-the-record claims that should be decided on appeal.  S.R. 76.  Justice Gerald expressly addressed only two aspects of Petitioner's ineffective assistance claim, the failure to challenge the Molineux

6

application and to advise regarding immigration consequences, but denied the motion in its entirety, concluding that Petitioner had "not satisfied the Strickland test." S.R. 76-77.

### E. Petitioner's Direct Appeal

Petitioner filed an appeal in the Appellate Division, Second Department. S.R. 78. Petitioner's appellate counsel argued, *inter alia*, that the People failed to prove the weapon possession and reckless endangerment crimes beyond a reasonable doubt. S.R. 94.[8]  Appellate counsel argued that, since the firearms expert said the fired bullet might have been defective and he never tested the operability of the unfired bullets, the People failed to prove that the gun's ammunition was operable and capable of causing death.  Id.  Appellate counsel acknowledged that trial counsel did not preserve the insufficiency of the evidence claim regarding the ammunition's operability, but urged the Appellate Division to review the claim nonetheless in the interest of justice, and argued in the alternative, that "trial counsel should be found ineffective for failing to raise this claim," under Strickland.  S.R. 98-99.  The Appellate Division affirmed the Queens Supreme Court's amended judgment and held that "[Petitioner]'s contention that the evidence was legally insufficient to support his convictions is unpreserved for appellate review (*see* CPL 470.05[2]; *People v Hawkins*, 11 NY3d 484, 491-492)."  S.R. 164; see also People v. Romero, 143 A.D.3d 1003, 1004 (2d Dep't 2016).  The Appellate Division continued: "In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon our independent review pursuant to CPL 470.15(5), we are satisfied that the verdict of guilt was not against the weight of the evidence." Id. (citations omitted).

---

[8] Appellate counsel also argued that, in light of the firearms expert's testimony that the gun may have been defective and the ammunition may have been inoperable and incapable of causing harm, the convictions were against the weight of the evidence.  S.R. 94, 102.

### F. Petitioner's Second Motion to Vacate the Judgment

Petitioner filed a second *pro se* motion to vacate the judgment pursuant to N.Y.C.P.L. § 440.10. Petitioner presented several grounds, including that: 1) the People did not prove that Petitioner committed all the elements of the weapon possession and reckless endangerment crimes because the "firearms expert admitted the fired bullet might have been defective and never tested the unfired bullets to confirm that they were operable;" and 2) trial counsel was ineffective for not raising this defense. S.R. 166-67. Citing to <u>Strickland,</u> Petitioner argued that counsel's decision not to raise the "clear-cut and completely dispositive" defense that "the People failed to prove the ammunition was live and operable because they did not test the unfired bullets" was not a strategic decision but rather an error so egregious that it deprived Petitioner of effective assistance. S.R. 172. After Petitioner's direct appeal was denied, the Queens Supreme Court issued its decision on Petitioner's second motion to vacate. S.R. 188-89. The Queens Supreme Court expressly denied Petitioner's claims that 1) the convictions were based on insufficient evidence; 2) the People failed to prove the crimes beyond a reasonable doubt; 3) evidence was improperly admitted at trial; and 4) trial counsel provided ineffective assistance. S.R. 189. Justice Gerald concluded that Petitioner "seeks an order to vacate his judgment of conviction on the same grounds as his prior CPL 440.10 motion and his appeal. In light of the Appellate Division's recent decision..., this court must follow its ruling as well as this Court's own decision [on Petitioner's prior 440.10 motion]." S.R. 189.

### G. Petitioner's Appeal to the New York Court of Appeals

Petitioner requested leave to appeal the Appellate Division's October 26, 2016, Order, affirming the Supreme Court's October 29, 2013, judgment pursuant to N.Y.C.P.L. § 460.20. S.R. 190, 206. Petitioner again argued that 1) the evidence was insufficient to support his weapon possession and reckless endangerment convictions; and 2) trial counsel was ineffective for not raising this insufficiency of the evidence claim and instead moving to dismiss on another, non-

meritorious basis.  S.R. 191, 193.  The People opposed Petitioner's request, arguing, *inter alia*, that "even if counsel had sought dismissal on the basis of operability, the trial court would have denied it, because the evidence was legally sufficient." S.R. 204.  The Court of Appeals denied Petitioner's leave application on March 3, 2017.  S.R. 206.

II. The Instant Petition

Petitioner, proceeding *pro se,* timely filed the instant petition for a writ of habeas corpus. ECF No. 1.  Respondent filed its response to the petition and the state court record.  ECF No. 6. The matter was referred to me for a Report and Recommendation pursuant to 28 U.S.C. 636(b).

**A. Petitioner's Claims**

Petitioner's instant petition argues that he is entitled to habeas relief because Respondent failed to prove all the elements of the crimes of Criminal Possession of a Weapon in the Second Degree and Reckless Endangerment in the First Degree.  Pet. 3.  Petitioner's principal claim is that the evidence was legally insufficient to prove that Petitioner possessed an operable gun and bullets. Pet. 3-6.[9]  Second, Petitioner argues that the assistance of his trial counsel was ineffective.  Pet. 8-10.  Specifically, Petitioner argues that his counsel was ineffective for failing to 1) request certain ballistics testing; 2) cross examine Detective DiCostanzo regarding the unspent cartridges; 3) object to testimony that the bullets came from the same gun; 4) object to Respondent's summation remarks; and 5) move to dismiss based on insufficiency of the evidence.  Id.  In other words, Petitioner argues that his attorney was ineffective for not requesting ballistics tests and not

---

[9] Petitioner makes a passing reference to a Brady violation.  See Pet. 5; Brady v. Maryland, 373 U.S. 83 (1963).  To establish a Brady violation, Petitioner would have to show the following: "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Fernandez v. Capra, 916 F.3d 215, 221 (2d Cir. 2019) (citing Strickler v. Greene, 527 U.S. 263, 281–82 (1999)).  Here, Petitioner does not allege that the State withheld or suppressed favorable evidence, and therefore Petitioner has no claim under Brady.

preserving key issues for appellate review. Pet. 8, 22. Respondent argues that Petitioner's insufficiency of the evidence claim and ineffective assistance of counsel claims are procedurally barred and/or are unexhausted. Resp't Mem. Law in Opp'n, ECF No. 6-1 (hereinafter "Resp't Br."). In the alternative, Respondent argues that Petitioner's claims are without merit. Id.

## DISCUSSION

I.   Standard of Review

**A.  The Antiterrorism and Effective Death Penalty Act**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim's adjudication resulted in a decision that was: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  "[W]hen a state court denies a claim that was squarely presented, there is a strong presumption that the denial is 'on the merits.'"  Golb v. Attorney Gen. of the State of New York, 870 F.3d 89, 97 (2d Cir. 2017), cert. denied sub nom. Golb v. Schneiderman, 138 S. Ct. 988 (2018); see also Harrington v. Richter, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  The district court's review of a claim adjudicated on the merits in

state court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  Moreover, the AEDPA standard of review for a claim adjudicated on the merits in state court is "difficult to meet and highly deferential[.]" Golb, 870 F.3d at 97 (quoting Contreras v. Artus, 778 F.3d 97, 106 (2d Cir. 2015)).  The district court has authority to grant the petition only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

The "contrary to" and "unreasonable application of" language in § 2254(d)(1) have "independent meaning." Carmichael v. Chappius, 848 F.3d 536, 544 (2d Cir. 2017) (citing Williams v. Taylor, 529 U.S. 362, 404–05 (2000)).  "[A] petitioner may show that a state court's decision was 'contrary to' federal law, by demonstrating either (1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams, 529 U.S. at 405).  Whereas, a state court decision is an "unreasonable application" of federal law if "a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Carmichael, 848 F.3d at 544 (quoting Williams, 529 U.S. at 413).  A district court's conclusion that the state court incorrectly or erroneously applied federal law is not enough to establish that the state court's application of federal law was unreasonable; rather, "a petitioner 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Carmichael, 848 F.3d at 544 (quoting Harrington, 562 U.S. at 103).

Where the state court's decision is unexplained, a district court should "look through" an unexplained state court decision "to the last related state-court decision that does provide a relevant rationale" and should apply a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018);[10] Scrimo v. Lee, 935 F.3d 103, 111 (2d Cir. 2019) (explaining that federal courts look through unexplained appellate decisions to the last related decision that provides a relevant rational and apply the AEDPA § 2254(d) standard to that reasoning).

### B. Exhaustion

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to ... correct a constitutional violation.'") (citation omitted). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if the petitioner "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47, 49 (2d Cir. 2010) (citations and quotation marks omitted). See also Baldwin, 541 U.S. at 32 (clarifying that a petitioner can "indicate the federal law basis for his claim in a state-court

---

[10] See also Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); cf. Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below.") (quoting Baldwin, 541 U.S. at 32).

When confronted with a "mixed" petition that contains exhausted and unexhausted claims, a district court can deny the unexhausted claims on the merits. See Bey v. Chappius, No. 16-CV-7084 (KAM), 2019 WL 4805401, at *7 (E.D.N.Y. Sept. 30, 2019); Benson v. Graham, No. 14-CV-06099 (JMA), 2019 WL 4917914, at *8 (E.D.N.Y. Sept. 30, 2019) ("Where the petition is a 'mixed petition,' containing both exhausted and unexhausted claims, the court can deny the unexhausted claims if they are plainly meritless.") (citing 28 U.S.C. § 2254(b)(2)).

### C. Procedural Default

An "important 'corollary' to the exhaustion requirement" is the procedural default doctrine, which bars a federal court from reviewing federal claims that were "procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila, 137 S. Ct. at 2064 (citations omitted); see also Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (explaining that the state rule is adequate if it is "firmly established," "regularly followed," and its application would not be "exorbitant") (citing Lee v. Kemna, 534 U.S. 362 (2002)); Coleman v. Thompson, 501 U.S. 722, 735 (1991) (explaining that a state court decision is not independent if the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law") (citation omitted). This procedural default bar applies only if the state court's opinion "*clearly and expressly state[d]* that its judgment rest[ed]

on a state procedural bar." Garner v. Lee, 908 F.3d 845, 859 (2d Cir. 2018), cert. denied, 139 S. Ct. 1608 (2019) (citations omitted).  Nonetheless, the procedural default bar remains in force, "even when the state court addresses the merits in reaching an alternative holding." Whitley v. Ercole, 642 F.3d 278, 286 n.8 (2d Cir. 2011); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("Thus, even when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.") (citing Glenn v. Bartlett, 98 F.3d 721, 725 (2d Cir. 1996)).  Yet, where it is ambiguous whether the state court rested its judgment on the state procedural rule, district courts should apply a presumption that the state court resolved the claim on the merits and should thus review the claim's merits.  See Garner, 908 F.3d at 859-60.

Moreover, even in cases where a state prisoner has procedurally defaulted his claims in state court, a petitioner can overcome the bar to federal review of those claims if the petitioner can show 1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or 2) the bar against review would "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  To establish the "cause" element, a petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Davila, 137 S. Ct. at 2065 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Attorney error can serve as such a factor and satisfy the cause element "only if that error amounted to a deprivation of the constitutional right to counsel."  Davila, 137 S. Ct. at 2065 (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) (explaining that an attorney's ineffectiveness in failing to preserve a claim for review in state court can establish cause, but only if the assistance was "so ineffective" that it violates the Constitution)).  However, generally, an ineffective assistance claim "must be presented to the state courts as an independent claim before it may be used to establish

cause[,]" Edwards, 529 U.S. at 452 (citation and internal quotation marks omitted), and "an attorney's ignorance or inadvertence" in failing to raise a claim in a postconviction proceeding does not establish cause, Trevino v. Thaler, 569 U.S. 413, 422 (2013) (citation omitted).[11]  If the petitioner cannot show cause and prejudice but seeks to establish the "fundamental miscarriage of justice" exception, then he "must advance *both* a legitimate constitutional claim *and* a credible and compelling claim of actual innocence."  Hyman v. Brown, 927 F.3d 639, 656 (2d Cir. 2019) (quoting Rivas v. Fischer, 687 F.3d 514, 540 (2d Cir. 2012)) (emphases in original).

II.    Petitioner's Claims

### A.  Insufficiency of the Evidence

In essence, Petitioner argues that he is entitled to habeas relief because the evidence the People presented is legally insufficient to prove that Petitioner possessed an operable gun, loaded with operable ammunition, and thus the People failed to prove all the elements of the weapon possession and reckless endangerment charges.  Pet. 3-6.  Respondent argues that Petitioner's insufficiency of the evidence claim is procedurally barred and meritless.  Resp't Br. 10.  Because this claim is procedurally defaulted and Petitioner does not establish an exception that would excuse the default, I recommend that the Petition should be denied on this ground.

Petitioner's insufficiency of the evidence claim was denied based on an adequate and independent state procedural rule thereby barring this Court from reviewing Petitioner's federal claim.  The Appellate Division held that "[Petitioner]'s contention that the evidence was legally

---

[11] In Martinez and Trevino, the Supreme Court set out narrow exceptions, where ineffective assistance by state postconviction counsel could serve as "cause." Davila, 137 S. Ct. at 2062 (citing Martinez v. Ryan, 566 U.S. 1 (2012) and Trevino v. Thaler, 569 U.S. 413 (2013)).  These exceptions do not apply to the instant case.  Cf. Williams v. Rock, No. 09-CV-3576 (JS), 2014 WL 3882331, at *3 (E.D.N.Y. Aug. 6, 2014) (finding Martinez and Trevino inapplicable where New York law provided petitioner a mechanism for raising ineffective assistance claims on direct appeal).

    The Clerk of Court is directed to send Petitioner the attached copies of all the unreported cases cited herein.

insufficient to support his convictions is unpreserved for appellate review (*see* CPL 470.05[2]; *People v Hawkins*, 11 NY3d 484, 491-492).”  S.R. 164.[12]  N.Y.C.P.L. § 470.05(2), commonly known as New York's “contemporaneous objection rule,” has repeatedly been held by the Second Circuit to be a firmly established and regularly followed procedural rule in New York.  Downs v. Lape, 657 F.3d 97, 102, 104 (2d Cir. 2011) (citations omitted).  See also Whitley v. Ercole, 642 F.3d 278 (2d Cir. 2011) (discussing New York's contemporaneous objection rule and finding that its application was not “exorbitant”).  Further, Hawkins explains that, to preserve for appellate review “a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be ‘specifically directed’ at the error being urged,” because “a specific motion brings the claim to the trial court's attention, alerting all parties in a timely fashion to any alleged deficiency in the evidence, thereby advancing both the truth-seeking purpose of the trial and the goal of swift and final determination of guilt or nonguilt of a defendant.” People v. Hawkins, 11 N.Y.3d 484, 492 (2008).  There is no basis for finding the application of the contemporaneous objection rule to be “exorbitant” in this case.  Having clearly cited to § 470.05(2) and Hawkins, the state court rested its judgment on an independent and adequate state procedural rule.  The state court's alternative holding on the merits does not lift the bar to this Court's federal habeas review of the claim.[13]

---

[12] Indeed, Petitioner's appellate counsel conceded that trial counsel did not preserve the insufficiency of the evidence claim regarding the operability of the ammunition.  S.R. 98.

[13] The Appellate Division also stated: “In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon our independent review pursuant to CPL 470.15(5), we are satisfied that the verdict of guilt was not against the weight of the evidence.”  S.R. 164.  The first line, discussing the federal insufficiency of the evidence claim, does not transform the decision into one that rests on federal law. Moreover, “[i]t is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding.” Torres v. O'Meara, 353 F. Supp. 3d 180, 187 (N.D.N.Y. 2019) (quoting Kimbrough v. Bradt, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013) and citing McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 Fed. App'x 69, 75 (2d Cir. 2011) (summary order) (“[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.”)).

In addition, for the reasons discussed *infra*, Petitioner fails to demonstrate cause for the default and actual prejudice on the basis of ineffective counsel; moreover, failure to consider the claim will not result in a fundamental miscarriage of justice. Therefore, this ground should be denied as procedurally barred.

### B.  Ineffective Assistance of Counsel

As previously noted, Petitioner argues that his counsel was ineffective on account of failing to: request certain ballistics testing; seek dismissal based on insufficient evidence; and preserve related issues for appellate review, e.g., by not cross-examining Detective DiCostanzo regarding the unspent cartridges, objecting to his testimony that the bullets came from the same gun, or objecting to Respondent's summation remarks. Pet. 8-10.  Respondent argues that Petitioner procedurally defaulted his ineffective assistance claim based on trial counsel's failure to move to dismiss based on insufficiency of the evidence because it was not raised on direct appeal.  Resp't Br. 13-15, 23-24.  Alternatively, Respondent argues the claim fails on the <u>Strickland</u> prejudice prong, as the trial court was not obligated to entertain any motion while Petitioner had absconded and, in any event, the insufficiency of the evidence claim was rejected on the merits by the Appellate Division.  Resp't Br. 15-17, 24.

Respondent also argues that Petitioner failed to exhaust the ineffective assistance claim based on trial counsel's failure to request ballistics testing.  Resp't Br. 24-25.  Respondent concedes that Petitioner could still raise this claim in a third N.Y.C.P.L. § 440.10 motion, but argues that it should be dismissed nonetheless as meritless.  <u>Id.</u>

### 1.  *The <u>Strickland</u> Test*

To establish a denial of the Sixth Amendment right to the effective assistance of counsel, Petitioner must satisfy a two-prong test established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  <u>Garner</u>, 908 F.3d at 860-61.  Petitioner must

demonstrate that 1) his counsel's "performance was deficient;" and (2) "the deficient performance prejudiced the defense." Id. at 861 (citing Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017), cert. denied sub nom. Waiters v. Griffin, 138 S. Ct. 385 (2017) and quoting Strickland, 466 U.S. at 687). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. (quoting Strickland, 466 U.S. at 697). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,…that course should be followed." Id. (quoting Strickland, 466 U.S. at 697 and citing Mitchell v. Scully, 746 F.2d 951, 954 (2d Cir. 1984)). To satisfy the prejudice prong, Petitioner "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 861-62 (quoting Strickland, 466 U.S. at 694). The probability of a different result "must be substantial, not just conceivable." Id. at 862 (quoting Richter, 562 U.S. at 111–12). "In assessing prejudice, we consider the cumulative effect of the errors committed by counsel." Gross v. Graham, No. 16-3220, 2020 WL 628738, at *2 (2d Cir. Feb. 11, 2020) (summary order) (citing Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)). Considerable deference is accorded to counsel's performance, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Bierenbaum, 607 F.3d at 50 (stating that the Strickland standard is "highly deferential" to eliminate the "distorting effects of hindsight").

2. *Exhaustion*

Although Respondent argues that Petitioner's ineffective assistance claim based on failing to move to dismiss for insufficiency of the evidence was not raised on direct appeal as an independent claim for relief, Resp't Br. 15, Petitioner's appellate counsel did raise this claim on direct appeal. Petitioner's brief to the Appellate Division offered an alternative argument that trial

counsel was ineffective for failing to preserve Petitioner's claim regarding the insufficiency of the evidence regarding the ammunition's operability and instead moving to dismiss on other grounds. S.R. 98-99.  Further, after the Appellate Division affirmed Petitioner's conviction, Petitioner sought review of the same ineffective assistance claim by the New York Court of Appeals.  S.R. 191.  Petitioner also raised similar claims in his two N.Y.C.P.L. § 440.10 motions.  S.R. 18; S.R. 166-72.  Thus, liberally construed, Petitioner exhausted this claim.

Respondent argues that Petitioner's ineffective assistance claim for failure to request ballistics testing is unexhausted.  Resp't Br. 24.  Petitioner argues that trial counsel was ineffective for failing to request "ballistics residue testing of [Petitioner's] clothing or hands[.]" Pet. 8.  While the *pro se* Petition indicates that the second ground was raised on direct appeal and in post-conviction proceedings, see Pet. 11, Respondent states that Petitioner did not present the claim that counsel was ineffective for failing to request ballistics testing to the state courts "in any form," Resp't Br. 24.  However, Petitioner did argue, *inter alia*, in his first § 440.10 motion that trial counsel was ineffective for his 1) failure to "establish a preponderant defense of the insufficient evidence procured by the prosecutor, and more so, their discretion not to corroborate the evidence by method of Parrafin testing or DNA of the ballistic evidence," S.R. 16, and to "present and raise question [sic] pertaining to why the arresting officers had never conducted a Gunshot Residue Test," S.R. 70; 2) decision to "use[] poor tactics to dismiss the criminal possession of a weapon charge," S.R. 72; and 3) failure to "adequately investigate, prepare for, and advise of possible defenses," S.R. 17.

In his second § 440.10 motion, Petitioner raised a similar claim: that the "firearms expert admitted the fired bullet might have been defective and never tested the unfired bullets to confirm that they were operable" and trial counsel was ineffective for not raising this defense.  S.R. 166-

67.  In his application to the New York Court of Appeals, Petitioner submitted a copy of his second § 440. 10 motion.  S.R. 193.

Whether construed as unexhausted but without merit or considered on the merits applying AEDPA deference, the result is the same.  Having reviewed the state court record in detail, I conclude that Petitioner's ineffective assistance claims should be denied as Petitioner does not satisfy the prejudice prong of the Strickland test.

3.  *The Merits*

Although the opinions of the Appellate Division and the Court of Appeals are silent as to Petitioner's Sixth Amendment claims, the district court looks through to the last related state court decision that provides a relevant rationale and applies the AEDPA § 2254(d) standard to that reasoning.  Justice Gerald's opinion on Petitioner's first § 440.10 motion is the last state court decision to provide a relevant rationale.[14] This decision on the merits of Petitioner's Sixth Amendment claims is entitled to AEDPA deference and was not contrary to or an unreasonable application of clearly established Federal law.[15]

i.  Failure to Seek Dismissal Based on Insufficiency of the Evidence

First, had trial counsel raised insufficiency of the evidence when trial counsel moved to dismiss, the likely result of the proceeding would not have been different, as the trial court would have found that Petitioner failed to meet the insufficiency of the evidence standard.

---

[14] Justice Gerald's opinion on Petitioner's second § 440.10 motion notes that Petitioner's second motion seeks an order to vacate the judgment "on the same grounds as his prior CPL 440.10 motion and his appeal. In light of the Appellate Division's recent decision..., this court must follow its ruling as well as this Court's own decision [on Petitioner's prior 440.10 motion]."  S.R. 189.

[15] Justice Gerald concluded that Petitioner had "not satisfied the Strickland test" and Petitioner's motion was "denied in its entirety."  S.R. 77.  Although the opinion expressly addressed only two aspects of Petitioner's ineffective assistance argument, the failure to challenge the Molineux application and to advise regarding immigration consequences, S.R. 76-77, the decision denied the motion in its entirety and correctly identifies Strickland as controlling regarding Petitioner's ineffective assistance claims.

Insufficiency of the evidence claims are subject to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>See, e.g.</u>, <u>People v. Contes</u>, 60 N.Y.2d 620, 621 (1983).  Under <u>Jackson</u>, an insufficiency of the evidence claim is denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 319 (emphasis in original); <u>cf.</u> <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence *only if no rational trier of fact could have agreed with the jury*.") (emphasis added and citation omitted).  Juries are afforded "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" <u>Coleman</u>, 566 U.S. at 655 (citation omitted).

Under <u>Jackson</u>, federal courts look to state law to identify the substantive elements of the crimes.  <u>Id.</u>  To support a conviction for criminal possession of a weapon in the second degree, "the People must prove that both the firearm and the ammunition were operable." <u>People v. McFadden</u>, 94 A.D.3d 1150, 1151 (2d Dep't 2012). There is no statutory definition for "operable." <u>People v. Hilaire</u>, 270 A.D.2d 359, 359–60 (2d Dep't 2000); <u>see also</u> N.Y. Penal Law § 265.03[3]; <u>but see</u> <u>People v. Lewis</u>, 39 A.D.3d 565, 566 (2d Dep't 2007) (defining operable as "capable of discharging live ammunition"); <u>People v. Samba</u>, 97 A.D.3d 411, 414 (1st Dep't 2012) ("An operable firearm is one that is capable of discharging ammunition.").  Operability may be proved circumstantially. <u>See</u> <u>People v. Spears</u>, 125 A.D.3d 1401, 1402 (4th Dep't 2015); <u>People v. Miles</u>, 119 A.D.3d 1077, 1079 (3d Dep't 2014); <u>People v. Hechavarria</u>, 158 A.D.2d 423, 425 (1st Dep't 1990).  To support a conviction for reckless endangerment in the first degree, "[i]n cases involving a discharged weapon, the firing of a gun, without more, is insufficient to support a reckless

endangerment conviction; there must be evidence demonstrating that the discharge created a grave risk of death to a person." People v. Durham, 146 A.D.3d 1070, 1073 (3rd Dep't 2017) (citations omitted); cf. People v. Stanley, 108 A.D.3d 1129, 1131 (4th Dep't 2013) (finding reckless endangerment verdict against the weight of the evidence where the People "presented no evidence that any person...was in or near the line of fire so as to create a grave risk of death to any such person.") (citations and internal quotation marks omitted); see also N.Y. Penal Law § 120.25.

Here, eyewitnesses testified that Petitioner pointed a gun at the victims, successfully fired a shot upward, that a bullet came out of the gun, that Petitioner again pointed a gun directly at other people and pulled the trigger, and when Petitioner attempted to fix the apparent jam in the gun, it fired again. A rational trier of fact could have credited this testimony and determined that the firearms expert corroborated the eyewitness testimony and showed that the gun and ammunition were operable.[16]    Likewise, a rational trier of fact could have determined that Petitioner's use of the gun created a grave risk of death to the victims. Accordingly, a rational trier of fact could conclude from the evidence offered at trial that Petitioner was guilty of both the reckless endangerment and weapon possession charges. Thus, trial counsel's decision not to move to dismiss these charges on the basis of insufficiency of the evidence is unlikely to have prejudiced

---

[16] Moreover, the cases relied on in Petitioner's appellate brief are distinguishable. See People v. Shaffer, 66 N.Y.2d 663, 664 (1985) (involving different crimes charged and the firearm failed to fire); People v. Aguilar, 202 A.D.2d 512, 513 (2d Dep't 1994) (involving two separate encounters); People v. Davis, 72 N.Y.2d 32, 37 (1988) (involving evidence suggesting that shooting was factually impossible); People v. Abney, 211 A.D.2d 801, 802 (2d Dep't 1995) (finding evidence legally sufficient to establish criminal possession and reckless endangerment convictions but that the verdict was against the weight of the evidence); People v. Johnson, 56 A.D.3d 1191, 1192 (4th Dep't 2008) (holding based on state-law weight of the evidence standard); People v. Lewis, 39 A.D.3d 565, 566 (2d Dep't 2007) (reversing judgment for criminal possession of a weapon in the fourth degree where gun was never recovered and "the People otherwise presented no evidence of operability, e.g., that the shell casings recovered from the scene fired live rounds, or that there were bullets, bullet fragments, or evidence of the same, found at the scene.") (emphasis added).

defendant, and Justice Gerald's holding is not contrary to or an unreasonable application of clearly established Federal law.[17]

ii.    Failure to Request Ballistics Tests

Second, had trial counsel requested ballistics residue tests, the likely outcome of the proceeding would not have been different.  Even if it is conceivable that a timely gunshot residue test could have been performed[18] and led to a favorable lab result (presumably the absence of gunshot residue), it is just as likely that a gunshot residue test could have led to a positive result or that a negative result would have been unpersuasive to the jury.  As the risk of harm to the case from a positive gunshot residue test result outweighed the potential evidentiary value of a negative test result, any decision to forego testing and instead cast doubt on the police department's failures during summation, T.T. 1058-61, may have been strategic and is unlikely to have prejudiced the defense.  Thus, the state court's decision that Petitioner was not deprived of the effective assistance of counsel was not contrary to or an unreasonable application of clearly established Federal law. Cf. Harrington v. Richter, 562 U.S. 86, 106–07 (2011) ("[I]t would be well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts[.]").

---

[17] Indeed, the Appellate Division observed in its alternative holding that the evidence was legally sufficient to establish Petitioner's guilt.  S.R. 164.  Cf. Bierenbaum, 607 F.3d at 57 (noting that, although the Appellate Division could have found the insufficiency of the evidence claim unpreserved, it addressed the claim, and given that the Appellate Division reviewed the claim, petitioner "cannot claim that counsel was ineffective in failing to preserve the issue for appeal.").

[18] It is questionable whether testing Petitioner's clothing and hands for gunshot residue would even have been feasible by the time trial counsel was retained, given that his clothing was not vouchered by the police.  Petitioner himself acknowledges in his § 440.10 motion that "material evidence was jeopardized when [Petitioner]'s clothing was not vouchered [by the police] for paraffin testing."  S.R. 11-12.

iii.    Failure to Preserve Issues Regarding the People's Ballistics Evidence

Petitioner's remaining contentions that trial counsel failed to object properly during the People's summation and to effectively pursue and preserve the insufficiency of the evidence defense during the cross and direct examination of Detective DiCostanzo also do not meet the Strickland test.    Petitioner's argument that counsel's failure to object during the People's summation deprived him of meaningful representation is belied by the record: trial counsel noted objections throughout the prosecution's summation.    See T.T. 1081-1107.    Any additional objection is unlikely to have changed the outcome of the proceedings.    Petitioner focuses on the fact that DiCostanzo testified that "the bullets might have been defective and low on powder" as proof that the ammunition was not operable.    See Pet. 3; see also S.R. 170.    Yet, DiCostanzo's full testimony was that, while "physically a bullet could have been so low in powder it has just enough to have make it out of the barrel and fall to the ground[,]" he continued on to say that, "[b]ut typically if that happened, it wouldn't have enough energy to cycle a firearm and eject a cartridge case." T.T. 850.    In light of this testimony, cross examining DiCostanzo regarding the ammunition's capability to cause harm or death, or whether the unspent ammunition was live, would not have likely changed the outcome of the proceedings.    This is especially so given that a gun's operability can be proven circumstantially.    In sum, the state court's decision is not contrary to or an unreasonable application of clearly established Federal law.

## CONCLUSION

Accordingly, it is respectfully recommended that Petitioner's application for a writ of habeas corpus should be denied.    As Petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on

24

other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that for the purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

### FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.


_____/S/_____

Dated: April 22, 2020                    LOIS BLOOM
      Brooklyn, New York               United States Magistrate Judge